IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| JONATHAN ASBELL, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | No. 3:12-cv-00579 |
| v. ) | |
| ) | Judge Nixon |
| EDUCATION AFFILIATES, INC., d/b/a ) | Magistrate Judge Bryant |
| FORTIS INSTITUTE OF NASHVILLE, and ) | |
| KIMC NASHVILLE, LLC, d/b/a FORTIS ) | JURY DEMAND |
| INSTITUTE, ) | |
| ) | |
| Defendants. ) | |

## ORDER

Pending before the Court is Defendants Education Affiliates, Inc., d/b/a Fortis Institute of Nashville and KIMC Nashville, LLC, d/b/a Fortis Institute's Motion to Compel Arbitration and Motion to Dismiss Plaintiffs' Class Action Claims (Doc. No. 4), with attached exhibits (Doc. Nos. 4-1 to 4-2). Plaintiffs filed a Response in Opposition (Doc. No. 10), to which Defendants filed a Reply (Doc. No. 16). For the reasons below, Defendants' Motion is **GRANTED** and Plaintiffs' claims against Defendants are **DISMISSED**.

I.  **BACKGROUND**

Plaintiffs are all current or former students at Fortis Institute ("Fortis"), operated by Defendants in Nashville, Tennessee. (Doc. No. 1-1 ¶ 1–11.) Plaintiffs had all enrolled at Fortis in either the Cardiovascular Technician Program ("CVT") or the Medical Lab Technician Program ("MLT"). (*Id.*) Before enrolling at Fortis, each Plaintiff entered into an enrollment agreement ("Enrollment Agreements" or "Contracts") with Fortis that contained a provision requiring Plaintiffs and Defendants to arbitrate "any disputes or claims arising out of or relating to [the] Enrollment Agreement." (Doc. No. 4-1 at 3, 5, 7, 9, 11, 13, 15, 17, 19, 21, 23.)

1

Plaintiffs filed a Complaint in Davidson County Chancery Court on May 4, 2012, advancing claims against Fortis for "breach of contract, breach of good faith and fair dealing, violation of the Tennessee Consumer Protection Act, fraud in the inducement, and fraudulent misrepresentation." (Doc. Nos. 1-1; 10 at 2.) Specifically, Plaintiffs alleged that Fortis made "false statements regarding the quality of education, accreditation of Fortis, graduates' preparedness to pass the required certification examination, and job prospects upon graduation." (Doc. No. 1-1 ¶ 16.) Plaintiffs also alleged that "students are subjected to unqualified instructors, inadequate facilities, inappropriate textbooks and no means of obtaining crucial and required laboratory and clinical experience." (*Id.* ¶ 17.) Defendants then removed the action to this Court on June 6, 2012. (Doc. No. 1.)

On June 7, 2012, Defendants filed the instant Motion (Doc. No. 4), with two attached exhibits (Doc. Nos. 4-1 to 4-2). Plaintiffs filed a Response (Doc. No. 10) on June 16, 2012, along with one exhibit (Doc. No. 10-1), and four attached cases (Doc. Nos. 10-2 to 10-5). Defendants then filed a Reply (Doc. No. 16) on June 26, 2012, along with an attached case (Doc. No. 16-1).

## II.   LEGAL STANDARD

To withstand a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss, a complaint must allege "[e]nough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The Supreme Court has clarified the *Twombly* standard, stating that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). Plausibility requires "[m]ore than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are

'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement of relief.'" *Id*. (quoting *Twombly,* 550 U.S. at 546).

When ruling on a defendant's motion to dismiss, the Court "must "[c]onstrue the complaint liberally in the plaintiff's favor and accept as true all factual allegations and permissible inferences therein." *Gazette v. City of Pontiac,* 41 F.3d 1061, 1064 (6th Cir. 1994). The Court must allow "[a] well-pleaded complaint [to] proceed even if it strikes a savvy judge that actual proof of those facts is improbable." *Twombly,* 550 U.S. at 556.

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 2 (2012), "is a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary." *Asplundh Tree Expert Co. v. Bates*, 71 F.3d 592, 595 (6th Cir. 1995) (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). The FAA provides that arbitration clauses "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Further, the FAA provides that "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which . . . would have jurisdiction . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." *Id.* § 4.

Courts employ a two-part inquiry to determine whether parties must arbitrate a particular dispute. First, the court must determine whether a valid arbitration agreement exists and, if so, then whether the dispute at issue falls within the parameters of the arbitration agreement. *Watson Wyatt & Co. v. SBC Holdings, Inc.*, 513 F.3d 646, 649 (6th Cir. 2005). The validity of the arbitration clause is determined according to the applicable state contract law. *Glazer v. Lehman Bros., Inc.*, 394 F.3d 444, 451 (6th Cir. 2005). If the court determines that the dispute is

within the scope of the arbitration clause, the court shall "direct[] the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4. Further, "when *all* of the issues raised in the district court must be submitted to arbitration," it is appropriate for the court to dismiss the case. *Green v. Ameritech Corp.*, 200 F.3d 967, 973 (6th Cir. 2000); *see also Moore v. Ferrellgas, Inc.*, 533 F. Supp. 2d 740, 751–52 (W.D. Mich. 2008).

## III. ANALYSIS

The Court proceeds to summarize the arguments made by Defendants in the instant Motion, as well as the Plaintiffs' Response and Defendants' Reply.

At the outset, Defendants aver that prior to enrolling at Fortis, Plaintiff "executed Enrollment Agreements with Fortis which contained, among other things, an agreement to arbitrate 'any disputes or claims arising out of or relating to [the] Enrollment Agreement' . . . ." (Doc. No. 4 at 2 (citing Doc. No. 4-1 at 3, 5, 7, 9, 11, 13, 15, 17, 19, 21, 23).) Defendants further assert that the Enrollment Agreements affect interstate commerce and are therefore enforceable under the FAA. (*Id.* at 3–4.) Finally, Defendants argue that all of Plaintiffs' claims fall within the scope of the arbitration clause, because the Plaintiffs' claims arise out of their enrollment and participation in the CVT or MLT programs at the Fortis campus in Nashville, Tennessee. (*Id.* at 4.)

With regard to Plaintiffs' class action claims, Defendants argue that if the Court compels arbitration, the class action claims cannot proceed in the absence of a class representative. (*Id.* at 8.) Additionally, Defendants argue that the arbitration clause provides that no dispute may be adjudicated as a class action either in court or as a class action arbitration proceeding under the rules of the American Arbitration Association. (*Id.* at 8.)

Plaintiffs respond with a number of arguments.  First, Plaintiffs argue that there was nothing "within the four corners of the enrollment agreement" identifying Defendanta Education Affiliates, Inc., or KIMC Nashville, LLC, as parties to the Enrollment Agreements.  (Doc. No. 10 at 2.)  Plaintiffs argue that the Enrollment Agreements were executed between Plaintiffs and MedVance Institute, but acknowledge that MedVance was acquired by Defendants well in advance of Plaintiffs entering into the enrollment agreements.  (*Id.*)  Second, Plaintiffs cast aspersions on the circumstances surrounding the formation of the contracts by arguing that Plaintiffs were "presented with the enrollment agreement and encouraged to sign it quickly in order to obtain funding for the loans they would need to finance their participation in Defendants' program."  (*Id.* at 3.)  Plaintiffs aver that "[t]here was no explanation or attention called to the arbitration provision or the fact that Plaintiffs were waiving their rights to pursue a jury trial or other judicial remedy."  (*Id.*)

Plaintiffs then make more substantive arguments regarding the legal validity of the Contracts.  First, Plaintiffs argue that the Enrollment Agreements were not supported by consideration due to Defendants' alleged fraudulent misrepresentations.  (*Id.* at 4–5.)  Plaintiffs contend that Defendants' representatives told each Plaintiff that either the CVT or MLT program was accredited.  (*Id.* at 4; Doc. No. 10-1 ¶ 1.)  Plaintiffs aver that, in fact, both programs were unaccredited and the Plaintiffs "would ultimately be prevented from taking the applicable licensing exams for employment" in those fields.  (Doc. No. 10 at 4–5.)  Additionally, Plaintiffs contend that they were promised: "clinical sites, when no such clinical sites were secured or imminent" (Doc. No. 10-1 ¶ 5); "high quality teaching and instruction, when the faculty and textbook resources were lacking" (*id.* ¶ 6); and laboratories purportedly for use by the CVT program, which, in fact, were for radiology students (*id.* ¶ 7).  (Doc. No. 10 at 5.)  Finally,

5

Plaintiffs argue that Defendants misrepresented the salaries Plaintiffs could expect to be paid upon obtaining employment as CVTs after graduation. (*Id.*) Therefore, Plaintiffs conclude, "there [could] be no meeting of the minds as required for the valid formation of a contract where . . . Defendants perpetrated a fraud upon Plaintiffs to induce them to sign the enrollment agreements." (*Id.*)

Plaintiffs' second substantive challenge is that the arbitration clause is unenforceable because the Enrollment Agreements were contracts of adhesion. (*Id.* at 5–6.) Specifically, Plaintiffs argue that they lacked any meaningful choice, contending that Defendants operate the only CVT program in the state of Tennessee, and that they were not able to enroll in the CVT program without signing the Enrollment Agreements. (*Id.* at 6.) Plaintiffs also assert that they "were not afforded the opportunity to consult with an attorney or given the option to bargain the terms of the enrollment agreement," and that they were not specifically advised of the arbitration provision or given an opportunity to opt out or bargain under the terms of the Contracts. (*Id.* at 6–7; Doc. No. 10-1 ¶ 10.) Further, they assert that because they all had only a high school education, they "were burdened with a distinct and clear disadvantage in bargaining power" relative to Defendants. (Doc. No. 10 at 7–8.) Plaintiffs contend that the Enrollment Agreements were typed in "very small font," that the arbitration clause was not highlighted separately from the rest of the Agreements, and that "[s]tudents were never advised that in signing the document they waived the fundamental right to a jury trial or the ability to file a class action lawsuit." (*Id.* at 8; Doc. No. 10-8 ¶ 10.)

Finally, Plaintiffs assert that they did not waive their right to a jury trial or to participate in a class action. (Doc. No. 10 at 9.) In doing so, Plaintiffs largely reiterate the same arguments,

6

including their alleged unequal bargaining power, the alleged lack of time afforded for them to contemplate the contract, and the assertion that the arbitration provision was "hidden." (*Id.*)

Defendants reply by stating, without elaboration, that there was no fraud in the inducement of the Contracts, and that even if there was, the law requires evidence of fraud in the inducement of the arbitration provision itself in order to invalidate the arbitration requirement. (Doc. No. 16 at 1–2.) Defendants aver that Plaintiffs have not and cannot allege that they were fraudulently induced into agreeing to arbitrate their disputes. (*Id.* at 2.) Further, Defendants argue that contracts of adhesion exist only where the contract imposes "unconscionable or oppressive terms," and that such a contract is not at issue here. (*Id.*) Finally, Defendants refute that Plaintiffs had no choice in entering into the Contracts, insisting that Plaintiffs could have refrained from contracting altogether. (*Id.* at 7.)

At the outset, the Court addresses Plaintiffs' arguments that they were encouraged to sign the Enrollment Agreement quickly and that no attention was called to the arbitration agreement. Under Tennessee contract law, a party's failure to read a contract will not relieve the party from the effect of the contract. *Giles v. Allstate Ins. Co., Inc.*, 871 S.W.2d 154, 157 (Tenn. Ct. App. 1993) ("To permit a party, when sued on a written contract, to admit that he signed it . . . but did not read it or know its stipulations would absolutely destroy the value of contracts."); *see Reno v. Suntrust, Inc.*, No. E2006-01641-COA-R3-CV, 2007 WL 907256, at *4–*6 (Tenn. Ct. App. March 26, 2007) (enforcing an arbitration provision despite the plaintiff's claim that she did not know of its existence and nature). Accordingly, this first argument fails. The Court also rejects the suggestion that Plaintiffs were not sophisticated enough to understand the consequences of the Contracts into which they entered. Persons of similar age are able to enter into contracts to purchase houses and automobiles, join the military, and marry. Plaintiffs in this case are adults

and were capable of intelligently contracting for educational services at the time they signed the Contracts. Further, the Court notes that Plaintiffs' assertions regarding the circumstances of the Contracts' formation are supported by the affidavit of only one Plaintiff. (*See* Doc. No. 10-1.) There is no assertion that any Plaintiff requested more time to review the Enrollment Agreements, or that they were somehow denied the same. Thus, the Court finds this argument without merit.

Plaintiffs' first substantive argument against enforcement of the arbitration provision asserts that the Contracts were not supported by consideration due to fraud in the inducement on the part of Defendants, on grounds detailed above. (*See* Doc. No. 10.) Plaintiffs do not argue that they were fraudulently induced to agree to the arbitration provision specifically, but rather, that they were fraudulently induced to agree to the Contract as a whole. It is well-settled that arguing fraudulent inducement in the formation of a contract as a whole will not relieve a party of its obligations under an arbitration agreement specifically. The Supreme Court addressed this very issue in *Rent-A-Center, West, Inc. v. Jackson*, 130 S. Ct. 2772 (2010). There, the Court explained that § 2 of the FAA provides that "'a written provision' 'to settle by arbitration a controversy' is 'valid, irrevocable, and enforceable.'" *Id.* at 2778. The Court noted that § 2 makes no mention of the validity of the entire contract in which the arbitration provision is contained. *Id.* Thus, the Court opined, "a party's challenge to another provision of the contract, or to the contract as a whole, does not prevent a court from enforcing a specific agreement to arbitrate. As a matter of substantive federal arbitration law, an arbitration provision is severable from the remainder of the contract.'" *Id.* (citing *Buckeye Check Cashing Inc. v. Cardegna*, 546 U.S. 440, 445 (2006)). However, "[i]f a party challenges the validity under § 2 of the precise agreement to arbitrate at issue, the federal court must consider the challenge before ordering

8

compliance with that agreement under § 4." *Id.* The Court continued, "where the alleged fraud that induced the whole contract equally induced the agreement to arbitrate which was part of that contract—we nonetheless require the basis of challenge to be directed specifically to the agreement to arbitrate before the court will intervene." *Id.* Ultimately, the Court held, "unless [the plaintiff] challenge[s] the delegation provision specifically, we must treat it as valid under § 2, and must enforce it under §§ 3 and 4, leaving any challenge to the validity of the Agreement as a whole for the arbitrator." *Id.* at 2779.

The Supreme Court's decision in *Rent-A-Center* controls in this case. Because Plaintiffs assail the validity of the contract as a whole, but not the arbitration clause specifically, this Court must enforce the arbitration provision. *See Marshall v. ITT Technical Institute*, No. 3:11-CV-552, 2012 WL 1565453 at *5 (E.D. Tenn. May 1, 2012) (relying on *Rent-A-Center* and compelling arbitration in part due to the plaintiff's failure to specifically challenge the validity of the arbitration clause in a contract for educational services, similar to the Contracts at issue here).

Plaintiffs' next argument—that the Enrollment Agreements are void as contracts of adhesion—fails for the same reason. Plaintiffs argue that the Enrollment Agreements, as a whole, were contracts of adhesion because they gave Plaintiffs no meaningful choice—either they could sign the agreement or forego CVT or MLT education in Tennessee. Regarding the arbitration agreements specifically, Plaintiffs argue only that they "were not advised" of them and they were not "not explained to them in any way." (Doc. No. 10 at 6–7.) Again, such assertions fail as a matter of Tennessee contract law, which does not relieve contracting parties of their responsibility to read the contract. *See Giles*, 871 S.W.2d at 157. Further, Plaintiffs' adhesion argument largely repeats assertions of fraud in the inducement of the contract generally, an argument that—as the Court has explained—is insufficient under *Rent-A-Center*.

9

Here, the Court can find no reason why it should not enforce the arbitration provision of the Enrollment Agreements. Plaintiffs do not sufficiently assert contract defenses to the arbitration provision itself, as required under *Rent-A-Center* to void their obligation to arbitrate. Further, the Court finds that the instant dispute falls squarely within the scope of the Enrollment Agreements. The scope of the arbitration provisions are broad; they apply to "[any] dispute or claims arising out of or relating to" the Enrollment Agreements. (*See* Doc. No. 4-1.) Whether Plaintiffs were afforded the education for which they contracted clearly relates to the substance of the Enrollment Agreement. Plaintiffs do not appear to dispute this point. The Sixth Circuit has held that "an arbitration clause requiring arbitration of any dispute arising out of an agreement is 'extremely broad.'" The Sixth Circuit has further held that "where a dispute involves a broadly written arbitration clause only an express provision excluding a specific dispute, or the most forceful evidence of a purpose to exclude the claim from arbitration, will remove the dispute from consideration by the arbitrators." *Answers in Genesis of Ky., Inc. v. Creation Ministries Int'l, Ltd.*, 556 F.3d 459, 470–71 (6th Cir. 2009) (quotation omitted). For these reasons, the Court finds that it is required to compel arbitration of the present dispute, as provided for in the Enrollment Agreements. Plaintiffs are not without recourse, but that recourse is not found here.

Finally, the Court addresses Plaintiffs' argument that they did not waive their right to a jury trial or to participate in a class action. In making the argument, Plaintiffs again rely on their alleged unequal bargaining power, their assertion that they were asked to sign the Enrollment Agreements quickly, and their assertion that the arbitration provision was not prominently highlighted within the contract. These arguments fail for the reasons discussed above. The arbitration provision is valid and enforceable, regardless of Plaintiffs' assertions about the

10
Case 3:12-cv-00579   Document 20   Filed 04/25/13   Page 10 of 11 PageID #: 207

validity of the contract as a whole or their unequal bargaining power. It is clear from the plain language of the arbitration provision that Plaintiffs did waive their right to participate in a class action. (Doc. No. 4-1 at 3, 5, 7, 9, 11, 13, 15, 17, 19, 21, 23 ("The parties agree that any dispute subject to arbitration shall not be adjudicated as a class action or a consolidated class arbitration proceeding either in court or under the rules of the American Arbitration Association").) Accordingly, Plaintiffs' claims may not be arbitrated as class action claims.

## IV. CONCLUSION

Plaintiffs are adults, capable of contracting for higher education services. Unfortunately, here, there are serious questions about whether Plaintiffs received the benefit of their bargains. Whether or not the Enrollment Agreements were valid as a whole, where, as here, Plaintiffs do not specifically assert that the arbitration clause is void, the Court is required to honor and enforce the arbitration clause under the FAA. According to the plain terms of the arbitration provision, Plaintiffs and Defendant must arbitrate the disputes at issue, and Plaintiffs may not proceed as a class. Accordingly, the Motion is **GRANTED** and Plaintiffs' claims against Defendants in this Court are **DISMISSED without prejudice**.

It is so ORDERED.

Entered this 24th day of April, 2013.

JOHN T. NIXON, SENIOR JUDGE
UNITED STATES DISTRICT COURT

11
Case 3:12-cv-00579   Document 20   Filed 04/25/13   Page 11 of 11 PageID #: 208